**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| BRIDGET MAAME ESSUMAN,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Bridget Maame Essuman, appearing pro se, alleges as follows:

## I. PRELIMINARY STATEMENT

1. This is an action for actual, statutory, and punitive damages against Equifax Information Services, LLC (Equifax) under the Fair Credit Reporting Act, 15 U.S.C. 1681 through 1681x (FCRA).

2. Equifax prepared and sold consumer reports that described Plaintiff, on their face, as simultaneously current and 120 to 180 days delinquent on eighteen federal student loan accounts during the same months in early 2025. The delinquency data Equifax published was impossible on its own terms: the accounts reported no preceding 30, 60, or 90 day delinquency, reported no delinquency at all in the four months immediately before the 120 day code appeared, carried a blank date of first delinquency, and then returned from 180 or more days past due to current status without any payment being recorded.

3. Plaintiff disputed this information in writing twice, in February 2026 and April 2026. Equifax changed nothing. When Plaintiff then exercised her statutory right to a description of the

procedure Equifax used to verify the disputed information, Equifax responded after the statutory deadline with a document that described no procedure and identified no furnisher, and that told Plaintiff its investigation had concluded the disputed information should be updated while leaving every substantive field of the account unchanged.

4. Equifax's conduct violated 15 U.S.C. 1681e(b) and 15 U.S.C. 1681i willfully or, in the alternative, negligently, and injured Plaintiff.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. 1331 because this action arises under federal law, and under 15 U.S.C. 1681p, which provides that an action to enforce any liability created under the FCRA may be brought in any appropriate United States district court without regard to the amount in controversy.

6. This action is timely under 15 U.S.C. 1681p. Each violation alleged occurred in 2025 or 2026, and this action is filed within two years of Plaintiff's discovery of each violation.

7. Venue is proper in this District under 28 U.S.C. 1391(b) because a substantial part of the events giving rise to the claims occurred in this District. Plaintiff resides in this District, the consumer reports at issue concern her, the harm was suffered in this District, and Equifax regularly conducts business in this District.

## III. PARTIES

8. Plaintiff Bridget Maame Essuman is a natural person residing at 12 Brookside Avenue, Apartment 16, Worcester, Massachusetts 01602. She is a consumer as defined by 15 U.S.C. 1681a(c).

9. Defendant Equifax Information Services, LLC is a limited liability company organized under the laws of Georgia with its principal place of business at 1550 Peachtree Street NW,

Atlanta, Georgia 30309. Equifax regularly conducts business in the Commonwealth of Massachusetts.

10. Equifax is a consumer reporting agency as defined by 15 U.S.C. 1681a(f) because, for monetary fees, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and it uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports.

11. Equifax is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis within the meaning of 15 U.S.C. 1681a(p).

## IV. FACTUAL ALLEGATIONS

### *A. The September 7, 2025 file disclosure*

12. On September 7, 2025, Plaintiff obtained a copy of her Equifax credit file, Equifax confirmation number 5250578934 (the September 2025 report).

13. The September 2025 report listed credit accounts furnished to Equifax by, among others, the furnishers identified on the report as DEPT OF ED/AIDVANTAGE, COMENITYBANK/VICTORIASSECRET, and BEST BUY/CBNA.

### *B. The eighteen internally impossible student loan tradelines*

14. The September 2025 report contained eighteen separate student loan tradelines under the furnisher name DEPT OF ED/AIDVANTAGE.

15. Every one of the eighteen tradelines stated, in its account header, a status of Pays As Agreed, a blank Amount Past Due field, and a blank Date of 1st Delinquency field.

16. At the same time, the twenty four month payment history table printed within every one of the eighteen tradelines carried Equifax narrative code 262, which the report itself defines

as 120 Days Past Due, for February 2025 and March 2025, and Equifax narrative code 264, which the report itself defines as 180 Days or More Past Due, for April 2025, together with a specific past due dollar amount reported for April 2025.

17. The eighteen tradelines are identified as follows by the masked account number printed on the report, the date opened, the balance reported as of the September 2025 report, and the past due amount reported for April 2025:

a. Account ending 0161, opened November 9, 2016, balance $322, April 2025 past due $13.

b. Account ending 0180, opened February 15, 2018, balance $2,250, April 2025 past due $83.

c. Account ending 0161, opened October 13, 2016, balance $2,372, April 2025 past due $89.

d. Account ending 0200, opened September 14, 2020, balance $10,956, April 2025 past due $454.

e. Account ending 0220, opened January 10, 2022, balance $1,722, April 2025 past due $70.

f. Account ending 0220, opened May 25, 2022, balance $2,912, April 2025 past due $118.

g. Account ending 0180, opened July 24, 2018, balance $755, April 2025 past due $30.

h. Account ending 0181, opened October 10, 2018, balance $863, April 2025 past due $32.

i. Account ending 0181, opened October 10, 2018, balance $4,858, April 2025 past due $194.

j. Account ending 0220, opened May 25, 2022, balance $3,696, April 2025 past due $150.

k. Account ending 0161, opened October 13, 2016, balance $3,730, April 2025 past due $151.

l. Account ending 0190, opened September 16, 2019, balance $4,883, April 2025 past due $194.

m. Account ending 0220, opened January 10, 2022, balance $2,912, April 2025 past due $118.

n. Account ending 0190, opened February 4, 2019, balance $5,961, April 2025 past due $227.

o. Account ending 0180, opened February 15, 2018, balance $2,668, April 2025 past due $107.

p. Account ending 0190, opened September 16, 2019, balance $6,510, April 2025 past due $259.

q. Account ending 0161, opened November 9, 2016, balance $1,488, April 2025 past due $56.

r. Account ending 0160, opened April 1, 2016, balance $3,437, April 2025 past due $138.

18. In total, the eighteen tradelines reported $2,483 past due for April 2025 and portrayed Plaintiff as 180 or more days delinquent on eighteen separate federal student loans.

19. The delinquency coding was impossible on its face. In each of the eighteen tradelines, the monthly rows for October 2024 through January 2025 carried only routine narrative codes, 248 (Student Loan) and 132 (Fixed Rate), with no delinquency code and no past due amount. An account cannot be 120 days past due in February 2025 unless it was continuously delinquent beginning in or around October 2024, and each of these tradelines affirmatively reported no delinquency at any point from October 2024 through January 2025.

20. No tradeline reported a 30, 60, or 90 day delinquency at any time. Each of the eighteen tradelines jumped directly from current status to a 120 day delinquency code.

21. The reported cure was equally impossible. Each tradeline reported 180 or more days past due for April 2025, then narrative code 088, which the report defines as Student Loan Payment Deferred, for May 2025, and then a return to current status with a paid on time indicator for June 2025, all without reporting any payment that could have cured a 180 day delinquency. The Actual Payment Amount fields in the relevant monthly rows were blank, and the Last Payment Date shown in the delinquent monthly rows was August 1, 2023.

22. The color coded payment history grid printed on the same page of each of the eighteen tradelines contradicted the narrative codes in the table below it. For February 2025 through April 2025 the grid displayed no 120 day or 180 day delinquency marker on any of the eighteen tradelines.

23. Each of the eighteen tradelines reported a blank Date of 1st Delinquency even while carrying 120 day and 180 day delinquency codes and a past due amount.

24. Two of the eighteen tradelines, identified in paragraphs 17(f) and 17(m) above, reported identical balances of $2,912, identical high credit of $2,750, and month by month identical twenty four month payment histories, yet reported different dates opened (May 25,

2022 and January 10, 2022) and different months reviewed (38 and 42). At least one of the two entries is a duplicate of the same underlying loan or contains data belonging to a different account. The duplication overstated Plaintiff's total reported indebtedness and total reported past due amounts.

25. The delinquencies Equifax reported did not accurately reflect the true status and payment history of Plaintiff's student loan accounts. Plaintiff's accounts were not 180 or more days past due in April 2025 as reported. The tradelines' own contents confirm this: no delinquency progression preceded the 120 day codes, no past due amount was reported for the February 2025 and March 2025 rows that carried the 120 day code, the accounts were coded as deferred in May 2025, and the accounts returned to current status in June 2025 without any payment being reported.

26. A tradeline that simultaneously reports Pays As Agreed with no amount past due and 120 to 180 days past due with a stated past due amount is inaccurate, or at minimum so internally contradictory and materially misleading that it cannot be maximally accurate. Both versions cannot be true.

***C. The Comenity tradeline***

27. The September 2025 report also contained a tradeline under the furnisher name COMENITYBANK/VICTORIASSECRET, account ending 6939, which reported a 30 day delinquency for January 2025 in its payment history grid.

28. That same tradeline simultaneously reported a status of Pays As Agreed, a January 2025 monthly row containing no past due amount and no delinquency narrative code, and a blank Date of 1st Delinquency. The reported account balance at the time was $101 against a $5 scheduled payment. The tradeline's own contents contradict the 30 day delinquency it reports.

***D. The Best Buy tradeline***

29. The September 2025 report contained a closed tradeline under the furnisher name BEST BUY/CBNA, account ending 2554, which reported 30 and 60 day delinquencies in its payment history grid for April 2019, May 2019, December 2019, August 2021, September 2021, February 2023, March 2023, and June 2023, while simultaneously reporting a blank Date of 1st Delinquency and a twenty four month history table containing no delinquency data corroborating the grid.

***E. Equifax published this information to third parties***

30. The inquiries section of the September 2025 report lists dozens of third party accesses to Plaintiff's Equifax file during 2025, including account review and other inquiries by Capital One Auto Finance, Citi Cards CBNA, Discover, Best Buy/CBNA, Navy Federal Credit Union, Digital Federal Credit Union, Comenity, and Progressive Insurance.

31. On information and belief, Equifax communicated consumer reports or file information containing the inaccurate information described above to third parties during the period that information was reporting, including in connection with the third party accesses reflected in the inquiries section of Plaintiff's file.

***F. The February 5, 2026 dispute***

32. As of February 2026, the tradelines described above continued to appear in Plaintiff's Equifax file.

33. On February 5, 2026, Plaintiff sent Equifax a written dispute by United States Postal Service certified mail, tracking number 9207 1902 3589 0900 0037 4583 35, identifying the accounts described above and the inaccuracies in them and requesting that Equifax correct or delete the inaccurate information.

34. On information and belief, Equifax received the February 5, 2026 dispute in February 2026.

35. Under 15 U.S.C. 1681i(a)(1)(A), upon receipt of the dispute Equifax was required to conduct a reasonable reinvestigation, free of charge, to determine whether the disputed information was inaccurate, and to record the current status of the disputed information or delete it from the file, before the end of the 30 day period beginning on the date Equifax received the dispute.

36. Equifax did not correct, modify, or delete any of the disputed information in response to the February 5, 2026 dispute. Every disputed tradeline continued to report unchanged, with the same contradictions on its face.

37. Equifax never notified Plaintiff of any determination that her dispute was frivolous or irrelevant, a determination that 15 U.S.C. 1681i(a)(3)(B) would have required Equifax to communicate within five business days of making it.

***G. The April 28, 2026 dispute***

38. On April 28, 2026, Plaintiff sent Equifax a second written dispute by United States Postal Service certified mail, tracking number 9207 1902 3589 0900 0039 0229 16, again identifying the inaccurate accounts described above and again requesting correction or deletion.

39. On information and belief, Equifax received the April 28, 2026 dispute in April or early May 2026.

40. Equifax again failed to correct, modify, or delete any of the disputed information. Every disputed tradeline continued to report unchanged. Equifax again provided no notice of any frivolous or irrelevant determination under 15 U.S.C. 1681i(a)(3).

***H. The method of verification request and Equifax's nonresponsive response***

41. On June 22, 2026, Plaintiff sent Equifax, by United States Postal Service certified mail, tracking number 9207 1902 3589 0900 0040 9629 28, a written request for a description of the procedure used to determine the accuracy and completeness of the disputed information, including the business name and address of any furnisher of information contacted in connection with that information and the telephone number of the furnisher, as provided by 15 U.S.C. 1681i(a)(6)(B)(iii) and 15 U.S.C. 1681i(a)(7).

42. Under 15 U.S.C. 1681i(a)(7), Equifax was required to provide that description not later than 15 days after receiving the request.

43. Equifax did not provide the description within 15 days of receipt. More than 25 days after the request, in mid July 2026, Plaintiff received from Equifax a document dated on or about July 2, 2026, bearing Equifax confirmation number beginning 6180597434 (the July 2026 response).

44. The July 2026 response did not describe any procedure used to determine the accuracy or completeness of any disputed item, did not identify any furnisher contacted, and did not provide any furnisher's business name, address, or telephone number. It was nonresponsive to Plaintiff's request in every respect.

45. The July 2026 response was instead a dispute results notice addressing the BEST BUY/CBNA account ending 2554. It stated: “You indicated that this account information was inaccurate. Our investigation concluded that the disputed information should be updated.”

46. The before and after versions of the BEST BUY/CBNA account printed in the July 2026 response were identical in every substantive field: the same status of Pays As Agreed, the same narrative codes 065, 158, and 229, the same blank Date of 1st Delinquency, the same zero

balance, and the same delinquency history. The only field that changed was Date Reported, which changed from May 19, 2026 to July 2, 2026.

47. Equifax therefore told Plaintiff that its investigation concluded the disputed information should be updated, and then updated nothing. Either Equifax did not conduct the reinvestigation the statute requires, or it failed to carry out the result its own investigation reached. Both failures left inaccurate and internally contradictory information in Plaintiff's file.

***I. Injury to Plaintiff***

48. Throughout the period described above, Equifax's file portrayed Plaintiff to its subscribers as a consumer who had recently been 120 to 180 days delinquent on eighteen separate federal student loans, one of the most damaging characterizations short of default that a credit file can contain.

49. As a result of Equifax's conduct, Plaintiff has suffered injury, including damage to her creditworthiness as portrayed to the third parties who accessed her file, the deprivation of her statutory rights to a reasonable reinvestigation and to the disclosures required by 15 U.S.C. 1681i, out of pocket expenses including the cost of three certified mailings, the loss of the time she spent preparing disputes and pursuing correction over more than five months, and frustration, aggravation, and emotional distress caused by Equifax's repeated refusal to correct information that was impossible on its face.

**COUNT I**

**Violation of 15 U.S.C. 1681e(b)**
**Willful or, in the Alternative, Negligent Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

50. Plaintiff incorporates every preceding paragraph as if fully set forth here.

51. Under 15 U.S.C. 1681e(b), whenever a consumer reporting agency prepares a consumer report it "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

52. Equifax prepared consumer reports concerning Plaintiff that contained the inaccurate and internally contradictory information described above, and it furnished consumer reports or file information containing that information to third parties.

53. Reasonable procedures designed to assure maximum possible accuracy would have detected and prevented the publication of the defects described above, each of which was apparent from the face of Equifax's own data: a status of Pays As Agreed and a blank past due amount coexisting with 120 and 180 day delinquency codes on the same tradeline; a 120 day delinquency code appearing with no preceding 30, 60, or 90 day delinquency and following four consecutive months reported as current; a 180 day delinquency curing to current status with no payment reported; a payment history grid contradicting the delinquency codes printed beneath it on the same page; delinquency codes accompanied by a blank Date of 1st Delinquency; and two tradelines carrying identical balances and identical month by month histories but different open dates.

54. Equifax failed to follow reasonable procedures to assure the maximum possible accuracy of the information it reported about Plaintiff, in violation of 15 U.S.C. 1681e(b).

55. Equifax's violation was willful within the meaning of 15 U.S.C. 1681n because Equifax published information whose falsity or impossibility was apparent from the face of its own records, and because Equifax continued to publish that information unchanged after Plaintiff's written disputes specifically identified the contradictions. This conduct was knowing or, at minimum, reckless.

56. In the alternative, Equifax's violation was negligent within the meaning of 15 U.S.C. 1681o.

57. As a result of Equifax's violation of 15 U.S.C. 1681e(b), Plaintiff suffered the injuries described above and is entitled to actual damages, or statutory damages of not less than $100 and not more than $1,000 for each willful violation, punitive damages, and the costs of this action under 15 U.S.C. 1681n, or actual damages and costs under 15 U.S.C. 1681o.

## COUNT II

### Violation of 15 U.S.C. 1681i(a)(1)(A), 1681i(a)(4), and 1681i(a)(5)(A)
### Willful or, in the Alternative, Negligent Failure to Conduct a Reasonable Reinvestigation and to Delete or Modify Inaccurate or Unverifiable Information

58. Plaintiff incorporates every preceding paragraph as if fully set forth here.

59. Upon receiving each of Plaintiff's disputes, Equifax was required by 15 U.S.C. 1681i(a)(1)(A) to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to record the current status of the disputed information or delete it within the statutory period; by 15 U.S.C. 1681i(a)(4) to review and consider all relevant information submitted by Plaintiff; and by 15 U.S.C. 1681i(a)(5)(A) to promptly delete or modify any item of disputed information found to be inaccurate or incomplete or which could not be verified.

60. Equifax received Plaintiff's February 5, 2026 dispute and Plaintiff's April 28, 2026 dispute. In response to both, Equifax left every disputed tradeline unchanged.

61. No reasonable reinvestigation could have verified the disputed information as accurate, because the information was impossible on its face. A reinvestigation that confirms a tradeline as simultaneously current and 180 days past due, that confirms a 120 day delinquency

with no preceding delinquency of any length, that confirms the cure of a 180 day delinquency without any payment, and that confirms two tradelines with identical histories and different open dates, is not a reasonable reinvestigation. On information and belief, Equifax did no more than transmit the dispute to the furnisher and accept the furnisher's response, without considering the contradictions apparent in Equifax's own file and without considering the information Plaintiff submitted.

62. Information that is inaccurate, incomplete, or cannot be verified must be promptly deleted or modified under 15 U.S.C. 1681i(a)(5)(A). Equifax neither deleted nor modified the disputed information after either dispute.

63. Equifax's own July 2026 response concedes the point. It states that Equifax's investigation concluded the disputed information should be updated, yet the account data it printed shows that nothing was updated. An agency that reaches the conclusion that disputed information should be updated and then leaves the information unchanged has violated 15 U.S.C. 1681i(a)(5)(A) by its own account of its own investigation.

64. Equifax's violations were willful within the meaning of 15 U.S.C. 1681n. Plaintiff's disputes placed the facial impossibilities squarely before Equifax, twice. Equifax's decision to verify impossible information without correction, and its issuance of a results notice that announced an update while making none, were knowing or reckless.

65. In the alternative, Equifax's violations were negligent within the meaning of 15 U.S.C. 1681o.

66. As a result of Equifax's violations of 15 U.S.C. 1681i, Plaintiff suffered the injuries described above and is entitled to actual damages, or statutory damages of not less than $100 and

not more than $1,000 for each willful violation, punitive damages, and the costs of this action under 15 U.S.C. 1681n, or actual damages and costs under 15 U.S.C. 1681o.

## COUNT III

### Violation of 15 U.S.C. 1681i(a)(6)(B)(iii) and 1681i(a)(7)
### Willful or, in the Alternative, Negligent Failure to Provide a Timely Description of the Procedure Used to Determine Accuracy

67. Plaintiff incorporates every preceding paragraph as if fully set forth here.

68. Under 15 U.S.C. 1681i(a)(6)(B)(iii) and 1681i(a)(7), upon a consumer's request a consumer reporting agency must provide a description of the procedure used to determine the accuracy and completeness of disputed information, including the business name and address of any furnisher of information contacted in connection with that information and the telephone number of the furnisher if reasonably available, not later than 15 days after receiving the request.

69. Plaintiff requested that description in writing on June 22, 2026.

70. Equifax failed to provide the description within 15 days of receipt. The response Plaintiff eventually received, more than 25 days after her request, contained no description of any procedure, identified no furnisher contacted, and provided no furnisher name, address, or telephone number.

71. Equifax's violation was willful within the meaning of 15 U.S.C. 1681n or, in the alternative, negligent within the meaning of 15 U.S.C. 1681o.

72. As a result, Plaintiff was deprived of information Congress required Equifax to give her, information she needed to identify the source and mechanism of the inaccurate reporting and to pursue correction, and she suffered the injuries described above. Plaintiff is entitled to actual damages, or statutory damages of not less than $100 and not more than $1,000 for each willful

violation, punitive damages, and the costs of this action under 15 U.S.C. 1681n, or actual damages and costs under 15 U.S.C. 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant Equifax Information Services, LLC and award Plaintiff:

a. Actual damages under 15 U.S.C. 1681n(a)(1)(A) or 15 U.S.C. 1681o(a)(1);

b. Statutory damages of not less than $100 and not more than $1,000 for each willful violation under 15 U.S.C. 1681n(a)(1)(A);

c. Punitive damages under 15 U.S.C. 1681n(a)(2);

d. The costs of this action under 15 U.S.C. 1681n(a)(3) and 15 U.S.C. 1681o(a)(2), together with reasonable attorney's fees in the event Plaintiff retains counsel;

e. Prejudgment and postjudgment interest as permitted by law; and

f. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: July 27, 2026

Bridget Maame Essuman
Plaintiff, appearing pro se
12 Brookside Avenue, Apartment 16

Worcester, Massachusetts 01602
bridgeessu2@gmail.com